Cara J. Hagan, SBN 146665
Clement K. Chih, SBN 326898
HAGAN & ASSOCIATES
110 E. Wilshire Avenue, Suite 405
Fullerton, California 92832

Telephone: (714) 526-3377
Facsimile: (714) 526-3317

Attorneys for Defendant,
KS WORLD, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN WHITAKER, an individual, | ) CASE NO.: 2:20-CV-10760-JAK-JC |
| Plaintiff, | ) *Hon. John A Kronstadt* |
| | ) *Department 10B* |
| vs. | ) |
| KS WORLD INC., a California Corporation | ) **DEFENDANT KS WORLD, INC'S** |
| | ) **NOTICE OF MOTION AND MOTION** |
| | ) **TO DISMISS PLAINTIFF'S STATE** |
| | ) **LAW UNRUH CLAIM** |
| Defendants. | ) |
| | ) **Date:    March 10, 2022** |
| | ) **Time:    8:30 a.m.** |
| | ) |
| | ) Complaint Filed: December 21, 2020 |
| | ) Trial Date:    None Set |
| | ) |
| | ) |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 10, 2022 at 8:30 a.m. or as soon thereafter as this matter may be heard before the Honorable John A Kronstadt, U.S. District Court Judge, in the above-entitled Court, located at First Street Courthouse, 350 W. First Street Courtroom 10B, Los Angeles, CA 90012, Defendants KS World, Inc., will and hereby does move this Court for an order dismissing the Cause of Action for California's Unruh Act claim. Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (FRCP) and 28 U.S.C. §1367, Defendants move to dismiss the California Unruh claims in their entirety as to Defendant KS World, Inc., because Plaintiff and Plaintiff's counsel have

1  been determined to be "high frequency litigants" and are forum shopping in the federal court system,

2  invoking federal court supplemental jurisdiction to avoid the heightened pleading standards and proof

3  required of high-frequency litigants in California's state courts.

4      This Motion to Dismiss is based on the Notice of Motion, this Motion, the accompanying

5  Memorandum of Points and Authorities, the pleadings and records on file in this action, the matters

6  of which the Court may take judicial notice, and such additional and further matters as may be

7  properly considered at or before the hearing on the Motion to Dismiss.

8      Pursuant to Local Civil Rule 7-3, Defendants' counsel contacted Plaintiff's counsel on May 26,

9  2021, to meet and confer regarding the arguments made in this Motion. The parties were unable to

10  reach a resolution during the conference of counsel and thus, Defendant is bringing forth the present

11  motion to dismiss.

12

13  DATED: February 1, 2022          Respectfully Submitted,

14                                  HAGAN & ASSOCIATES

15

16                                  By: _____

17                                  CARA J. HAGAN
                                CLEMENT K. CHIH
                                Attorneys for Defendant,

18                                  KS WORLD, INC.

19

20

21

22

23

24

25

26

27

28

Defendant's Notice of Motion and Motion to Dismiss Plaintiff's Unruh Claims

1                   **MEMORANDUM OF POINTS AND AUTHORITIES**

2         Defendant KS World Inc. hereby submits the following Memorandum of Points and Authorities

3 in support of its Motion to Dismiss Plaintiff's Unruh Claims in the within proceeding.

4 **I.  INTRODUCTION**

5         Plaintiff Brian Whitaker ("Plaintiff") filed this Americans with Disabilities Act ("ADA")

6 complaint against Defendant through his counsel of record, Potter Handy, LLP ("Potter Handy").

7 [ECF No.1]. Plaintiff is a high-frequency litigant" as defined by California law. Cal. Code. Civ.

8 Proc., § 425.55, subd (b). Plaintiff's complaint, one of three filed on this day and 62 filed in the same

9 month, alleges non-invasive and trivial ADA violations for (1) wheelchair accessibility to an outdoor

10 dining table which was placed outside as a required COVID-19 dining surface, (2) the outside dining

11 "turf" was allegedly not properly maintained making it difficult for his wheelchair to go over the lip

12 of the turf, (3) the entrance door handle required tight grasping to operate, and (4) the restroom

13 mirror is one inch too high and the plumbing underneath the sink is not properly wrapped.

14         The complaint is a garden variety, boilerplate complaint - it alleges four ADA violations[1] and also

15 injects a derivative California Unruh Civil Rights Act claim. The ADA statutory scheme is designed

16 as remedial and is intended to ensure disability access - it does not carry statutory penalties. In

17 contrast, California's Unruh Civil Rights Act ("Unruh Claim") does provide for statutory penalties.

18 In order to combat abusive litigation arising from disability access cases flooding California courts,

19 California has enacted heightened standards of pleading and proof. As a result, filing of federal

20 district court ADA complaints have "skyrocketed" as ADA-plaintiffs engage in forum shopping, and

21 invoking federal court supplemental jurisdiction to circumvent those very same protections enacted

22 to combat ADA abuse. Plaintiff has availed itself of the Federal Court system to avoid California

23 states heightened requirements. Plaintiff can only do so, because of the Unruh claims.

24         Defendant requests the Court to decline supplemental jurisdiction and dismiss Plaintiff's

25 California Unruh Claim.

26 ///

27

28

---

[1] Of course the number of violations being important to claim the statutory penalty.

Defendant's Notice of Motion and Motion to Dismiss Plaintiff's Unruh Claims

## II.    FACTUAL SUMMARY AND PROCEDURAL HISTORY.

The subject store is a Shin-Sen-Gumi Hakata Ramen located at 1601 Sawtelle Blvd., Los
Angeles, California ("the Store").[ ECF No. 1 at ¶ 3]. Plaintiff identifies the month (November 2020)
but not the date of his alleged visit. [ECF No. 1 at ¶ 8]. Plaintiff's stated purposes of visiting the
Store was to "avail himself of its goods and to assess the business for compliance with the disability
access laws." [ECF No. 1 at ¶ 8]. Plaintiff alleges ADA violations regarding "lack of sufficient knee
or toe clearance," "a pothole under the [outdoor dining] turf," handle that required tight grasping to
operate," and "the restroom mirror is too high and the plumbing underneath the restroom sink is not
properly wrapped." [ECF No. 1 at ¶ 12, 17, 22, and 28].[2] Plaintiff's Unruh Claim is derivative of his
ADA claim. [*See* ECF No. 1 at ¶ 47] ["The Unruh Act provides that a violation of the ADA is a
violation of the Unruh Act"]. Plaintiff's prayer for relief seeks statutory penalties that are not
available under the ADA. [*See* ECF No. 1 at 8:17-18]. Plaintiff does not request any relief under the
ADA that is not available under California law. [*See* ECF No. 1 at 8:13-18].

## III.    STANDARD OF LAW

"In an action over which a district court possesses original jurisdiction, it has 'supplemental
jurisdiction over all claims that are so related to claims in the action within such original jurisdiction
that they form part of the same case or controversy under Article III of the United States
Constitution." *Arroyo v. Two Unoil, LLC*, No. CV192769PSGJEMX, 2019 WL 6792804, at *2 (C.D.
Cal. Aug. 7, 2019)(citing 28 U.S.C. § 1367©). "However, a district court has the discretion to decline
to exercise supplemental jurisdiction if: (1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has
original jurisdiction, (3) the district court has dismissed all claims over which it has original
jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining
jurisdiction. *Id*. At *2 (citing 28 U.S.C. § 1367©). "The Supreme Court has explained that
justification for supplemental jurisdiction 'lies in considerations of judicial economy, convenience
and fairness to litigants[.]'" *Id*. (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

---

[2]Defendant disagrees with each of Plaintiff's contentions. Further, Plaintiff has admitted he personally never went
into the establishment and did not personally experience these alleged "defect". In fact, the store was not open for regular
business when he was allegedly present and he never attempted to patronize the store.

1   "The Ninth Circuit does not require an 'explanation for a district court's reasons [for declining

2   supplemental jurisdiction] when the district court acts under any of the first three provisions' of 28

3   U.S.C. § 1367©." *Arroyo* at *2 (citing *San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470,

4   478 (9th Cir. 1998)). "However, when the district court declines supplemental jurisdiction under the

5   fourth 'exceptional circumstances' provision, it must 'articulate why the circumstances of the case

6   are exceptional in addition to inquiring whether the balance of Gibbs values provide compelling

7   reasons for declining jurisdiction in such circumstances.'" *Arroyo* at *2 (citations omitted).

8   "According to the Ninth Circuit, this 'inquiry is not particularly burdensome.'" *Id.*

9   A. **Supplemental Jurisdiction Should Be Denied to These High-Frequency Litigants**

10   In the recent Central District case of *Arroyo v. Two Unoil, LLC*, No. CV192769PSGJEMX, 2019

11   WL 6792804, at *1 (C.D. Cal. Aug. 7, 2019), the Court declined supplemental jurisdiction of an

12   ADA plaintiff's Unruh Claim under facts that are not meaningfully distinguished from this case. As

13   in this case, "plaintiff filed suit in this Court, requesting injunctive relief under Title III of the

14   Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., and injunctive relief and

15   monetary damages under California's Unruh Civil Rights Act, Cal. Civ. Code §§ 51-53." *Arroyo*,

16   2019 WL 6792804, at *1.

17   In *Arroyo*, defendants asked the Court "to decline to exercise supplemental jurisdiction over

18   Plaintiff's state law claim because (1) the Unruh Act claim substantially predominates over the ADA

19   claim and (2) Plaintiff has filed his claims in federal court as an 'end-around' California's heightened

20   pleading requirements for disability discrimination suits." *Arroyo*, at *3. The court summarized

21   California's effort to combat ADA abuse as follows:

22      *In 2012, in an attempt to deter baseless claims and vexatious litigation, California adopted
        heightened pleading requirements for disability discrimination lawsuits under the Unruh Act.*
23      *(citations omitted) These heightened pleading requirements apply to actions alleging a
        "construction-related accessibility claim," which California law defines as "any civil claim in*
24      *a civil action with respect to a place public accommodation, including but not limited to, a claim
        brought under Section 51, 54, 54.1, or 55, based wholly or in part on an alleged violation of any*
25      *construction-related accessibility standard." Cal. Civ. Code § 55.52(a)(1). Under these
        requirements, the plaintiff must include in the complaint specific facts concerning the plaintiff's*
26      *claim, including the specific barriers encountered or how the plaintiff was deterred and each
        date on which the plaintiff encountered each barrier or was deterred. See Cal. Civ. Code*
27      *§ 42.50(a). California law also requires the plaintiff to verify the complaint; a complaint that is
        not verified is subject to a motion to strike. Id. § 425.50(b)(1). . . . When California continued to*
28      *experience large numbers of these actions, the state legislature imposed additional limitations*

Defendant's Notice of Motion and Motion to Dismiss Plaintiff's Unruh Claims

1    *on "high-frequency litigants.: A "high-frequency litigant" is defined as: A plaintiff who has filed*
*10 or more complaints alleged a construction-related accessibility violation within the 12-month*
2    *period immediately preceding the filing of the current complaint alleging a construction-related*
*accessibility violation. Id. § 425.55(b)(1). The definition of a high-frequency litigant also extends*
3    *to attorneys. Id. § 425.55(b)(2).*

4    *Arroyo at *4.*

5        The court noted that, "although Plaintiff had filed only six ADA complaints within the twelve-

6    month period immediately preceding his filing of the current complaint . . . Plaintiff has filed more

7    than eighty other ADA cases." *Arroyo*, at *4. "In addition, each of Plaintiff's attorneys-of-record

8    [Potter Handy] have filed hundreds, if not thousands, of ADA cases within the twelve-month period

9    preceding the filing of this complaint." *Id.* (Brackets added). "Therefore, the Court [found] that

10    Plaintiff and Potter Handy[3] comfortably fit within the definition of a 'high-frequency litigant.'"

11    *Arroyo* at *4 (brackets added).

12        "California also requires complaints filed by high-frequency litigants to allege certain additional

13    facts, including whether the action is filed by, or on behalf of, a high-frequency litigant, the number

14    of construction-related accessibility claims filed by the high-frequency litigant in the preceding

15    twelve months, the high-frequency litigant plaintiff's reason for being in the geographic area of the

16    defendant's business, and the reason why the high-frequency litigant plaintiff desired to access the

17    defendant's business." *Id.* (citing Cal. Civ. Proc. Code § 425.50(a)(4)(A)).

18        The court further explained that "[b]ecause California's heightened pleading standards and

19    increased filing fees do not apply in federal court, plaintiffs can circumvent these restrictions imply

20    by relying on § 1367(a)'s grant of supplemental jurisdiction to file their Unruh Act claims in federal

21    court when combined with an ADA claim for injunctive relief." *Arroyo* at *5. Relying on statistics

22    from the Clerk's Office, the court noted that "the number of construction-related accessibility claims

23    filed in the Central District has skyrocketed both numerically and as a percentage of total civil filings

24    since California began its efforts to curtail the filing of such actions in its state courts." *Id.*

25        Based on the foregoing, the court concluded that "[p]laintiff has evaded these limits [imposed

26    by California law] and sought a forum in which he can claim these state law damages in a manner

27

28    ─────────────────────
[3]Potter Handy, LLP, is the same attorney representing Plaintiff Whitaker in the present case.

1   inconsistent with the state law's requirements." *Id.* The court further based its decision on the "ever-

2   increasing number" of such cases as a burden to federal courts. *Id.* Thus, the court found "exceptional

3   circumstances" and "compelling reasons" to decline supplemental jurisdiction of the Unruh Claim.

4   *Id.*

5       Finally, the Court also justified its decision upon consideration of the Gibbs factors - "values of

6   judicial economy, convenience, fairness, and comity." *Id.* This was due to "[p]laintiff's attempt to

7   use federal court as an 'end-around' California's requirements." *Id.*

8       In the recent Central District case of *Whitaker v. Mac*, 411 F. Supp. 3d 1108 (C.D. Cal. 2019),

9   which involved the same Plaintiff as the instant case and represented by the same firm, the Court also

10  declined supplemental jurisdiction of an ADA plaintiff's Unruh Claim under facts that are not

11  meaningfully distinguished from this case. *See* Complaint at 10-21, *Whitaker v. Mac*, 411 F. Supp.

12  3d 1108 (C.D. Cal. 2019), attached hereto as Exhibit A. Like *Arroyo* (and like this case), *Whitaker*

13  involved a boilerplate ADA-Unruh complaint filed by Potter Handy, on behalf of Brian Whitaker,

14  the same plaintiff in the present case. *Whitaker*, at 1108. Plaintiff alleged violations of the Americans

15  with Disabilities Act and related state-law claims. *Whitaker*, at 1108. The court employed an

16  essentially identical analysis to *Arroyo*, *supra*. The court reached the same conclusion and declined

17  supplemental jurisdiction over plaintiff's Unruh Claim. *Whitaker*, at 1108. The court acknowledged

18  that "by declining to exercise supplemental jurisdiction, the Court is merely restoring the balance

19  Congress struck when it enacted the ADA and provided a private right of action for injunctive relief

20  and an award of attorneys' fees, but did not allow for the recovery of statutory damages." *Id.*

21  **IV.    ARGUMENT**

22      This case is identical to *Arroyo* and *Whitaker*, *supra*, absent the minor differences in the alleged

23  violations. This case, and *Arroyo*, and *Whitaker*, all arise from a boilerplate complaint filed by Potter

24  Handy.[4] This case, and *Whitaker*, both involve the high-frequency litigant Brian Whitaker. In each

25  case, a high-frequency litigant alleges an ADA violation and also adds a related Unruh claim to

26  invoke federal jurisdiction. In each case, Plaintiff's attorneys of record (Potter Handy) "have filed

27  _____

28  [4]A comparison of the instant complaint and the attached complaint by this same Plaintiff vs. Bhupinder S. Mac
    shows the Complaints to be identical except for the parties and the alleged violation. All other Plaintiff's of the Complaints
    are identical

7

1    hundreds, if not thousands, of ADA cases within the twelve-month period preceding the filing of this

2    complaint." *Arroyo* at *4 (finding "Plaintiff and his counsel comfortably fit within the definition of

3    a 'high-frequency litigant'").

4        In the instant complaint, Plaintiff fails to allege the date of his alleged visit to the Store, and

5    alleges only the month. It provides no specificity, and merely alleges insignificant alleged violations

6    that there (1) a "lack of sufficient knee or toe clearance under the dining surfaces on outdoor tables

7    required to be used during COVID-19 for wheelchair use" (ECF No. 1 at ¶ 12); (2) the outdoor

8    dining "turf[5] was not maintained such that it was stable, firm and slip-resistant because of a pothole

9    under the turf" (ECF No. 1 at ¶ 17); (3) the "entrance door handle had a pull bar style handle that

10   required tight grasping to operate"[6] (ECF No. 1 at ¶ 22); and (4) the "restroom mirror is too high and

11   the plumbing underneath the restroom sink is not properly wrapped" (ECF No. 1 at ¶ 28). This would

12   not survive California's pleading standard (specific and verified complaint, among other

13   requirements), and thus implicates disfavored forum shopping.

14       Plaintiff and Plaintiff's counsel have brought exactly the type of case California sought to shield

15   its businesses from, as recognized in *Arroyo* and *Whitaker, supra.* The Court should not allow it to

16   stand.

17   **VI.    CONCLUSION.**

18       Based upon the foregoing facts and authorities, Defendants respectfully request that the court

19   grant their motions to dismiss those portions of the pleading as specified in this noticed motion.

20   DATED: February 1, 2022                    Respectfully Submitted,

21                                              HAGAN & ASSOCIATES

22                                              By:

23                                              CARA J. HAGAN
                                                CLEMENT K. CHIH
24                                              Attorneys for Defendant,
                                                KS WORLD, INC.

25

26

27       [5]Turf that was put in place because COVID-19 required only outdoor walk up to take orders and the patrons had to stand on the outside sidewalk. Defendant has no control over the maintenance of upkeep of a sidewalk.

28       [6]Plaintiff has since admitted he did not enter the store and never even tried to open the door.

Defendant's Notice of Motion and Motion to Dismiss Plaintiff's Unruh Claims